Daniel J. Herling (SBN 103711)
djherling@mintz.com
Brent M. Douglas (SBN 268277)
bdouglas@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone: 415-432-6000
Facsimile:  415-432-6001
Attorneys for Defendant
KÄRCHER NORTH AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| 181 SALES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>KÄRCHER NORTH AMERICA, INC.; and DOES 1-20,<br><br>Defendants. | Case No.  3:15-CV-03191-JST<br><br>**DEFENDANT KÄRCHER NORTH AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION IN LIMINE REGARDING CHOICE OF LAW**<br><br>**DATE:** April 28, 2016<br>**TIME:** 2:00 p.m.<br>**LOCATION:** Courtroom 9<br>**JUDGE:** Hon. Jon S. Tigar<br><br>**Assigned to the Hon. Jon S. Tigar**<br><br>**Complaint Filed June 5, 2015** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................................1

II.   ARGUMENT ..........................................................................................................................2

    A.    The Independent Wholesale Sales Representatives Contractual Relations Act Does Not Apply to This Action Because Menards is Not Located in California. ...................................................................................................................2

    B.    A Balancing of the Factors Under the Restatement Favors Delaware Law. ...........5

        **1.**    Plaintiff Bears the Burden to Apply a Choice of Law Other than What the Parties Agreed Upon. ................................................................................5

        **2.**    Delaware Has a Substantial Relationship to the Parties Because KNA is a Delaware Corporation. ..........................................................................6

        **3.**    Applying Delaware Law is not Contrary to a Fundamental California Policy. ............................................................................................................7

        **4.**    California Does Not Have a Materially Greater Interest in the Outcome of This Litigation Than Delaware. ..............................................8

        **5.**    If There Were No Choice-of-Law Provision, California Law Would Still Not Apply. ..............................................................................................9

    C.    The MRA Has the Choice-of-Law Provision of Delaware. ....................................11

III.  CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Application Group, Inc. v. Hunter Group, Inc.*,
   61 Cal.App.4th 881 (1998) .................................................................................................. 6

*Ascension Ins. Holdings, LLC v. Underwood*,
   2015 Del. Ch. LEXIS 19 (Del. Ch. Jan. 28, 2015) ................................................................ 7, 8

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (2005) .......................................................................................................... 8

*Fields v. Legacy Health System*,
   413 F.3d 943 (9th Cir. 2005) ................................................................................................ 5

*LLC v. Superior Court*,
   189 Cal. App. 4th 500 (2010) ............................................................................................... 7

*NACCO Indus., Inc. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009) .................................................................................................. 7

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (Cal. 1992) ........................................................................................ 6, 7, 9, 12

*Peleg v. Neiman Marcus Group, Inc.*,
   204 Cal. App. 4th 1425 (Cal. App. 2nd Dist. 2012) ............................................................. 8

*Pinela v. Neiman Marcus Group, Inc.*
   238 Cal.App.4th 227 (Cal. App. 1st Dist. 2015) .................................................................. 8

*Reilly v. Inquest Technology, Inc.*,
   218 Cal. App. 4th 536 (Cal. App. 4th Dist. 2013) ............................................................ 3, 4

*Trust One Mortgage Corp. v. Invest America Mortgage Corp.*,
   134 Cal. App. 4th 1302 (2005) ............................................................................................ 6

*Washington Mutual Bank v. Superior Court*,
   24 Cal. 4th 906 (2001) ....................................................................................................... 6, 7

**Statutes**

Cal. Civ. Code, § 1636 ................................................................................................................ 11

Cal. Civ. Code, § 1639 ................................................................................................................ 11

Cal. Civ. Code, § 1738.10 ..................................................................................................... 2, 4, 5

Cal. Civ. Code, § 1738.12(a) .................................................................................................... 4

Cal. Civ. Code, § 1738.12(e) .................................................................................................... 3

Cal. Civ. Code, § 1738.13(a) ............................................................................................ 2, 3, 4

Cal. Civ. Code, § 1738.13(b) .................................................................................................... 3

Cal. Civ. Code, § 1738.15........................................................................................................ 3

California Wholesale Sales Representatives Act (Cal. Civ. Code §§ 1738.10-17) .................... *passim*

Del. Code § 2708 ..................................................................................................................... 8

**Treatises**

Restatement 2d of Conflict of Laws, §§ 187, 188 (2nd ed. 1988) .............................................. *passim*

## I. INTRODUCTION

Defendant Kärcher North America, Inc. ("KNA") is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware. KNA's headquarters and principal place of business are in Denver, Colorado. KNA manufactures pressure washers and other commercial, industrial, and consumer cleaning equipment. KNA distributes its products through a network of third-party sales representatives, each of which has an exclusive retailer to which they solicit orders for KNA products. Plaintiff 181 Sales, Inc. ("181 Sales") was one of these sales representatives.

181 Sales is a corporation duly organized under the laws of the State of Nevada and, as of July 24, 2015, is in good standing under the laws of that state. Prior to July 24, 2015, a search for 181 Sales on the Nevada Secretary of State website revealed that Plaintiff's status as a domestic corporation was revoked by that state on August 31, 2012. On July 24, 2015, as a result of KNA's Motion to Dismiss Plaintiff's Complaint for Lack of Capacity, Plaintiff had its status as an active Nevada corporation reinstated.[1]

181 Sales has never been registered to do business in California, and there are no records of 181 Sales with the California Secretary of State. Plaintiff contends that at all relevant times in this litigation 181 Sales had its principal and only place of business in California, where its sole employee, Kathleen Brown, resided, but Ms. Brown has since moved to Oregon.

181 Sales and KNA entered into a Manufacturer Representative Agreement ("MRA"), on June 1, 2014. (*See* Declaration of Daniel J. Herling, Exh. A.) The choice-of-law provision in the MRA states: "Governing Law – This Agreement shall be made and construed in accordance with the laws of the State of Delaware located in the United States of America." MRA, § 12.2. KNA executed the MRA in Englewood, Colorado. 181 Sales executed the MRA in California.

The MRA made 181 Sales the exclusive sales representative for: (1) all Menards stores anywhere; and (2) any store within the territory of Alaska, Washington, Oregon, Idaho, and

---

[1] See Motion to Dismiss (Dkt. No. 11) and Reply Brief (Dkt. No. 24).

Montana. MRA, Attachment A. There are no Menards stores in California.

This case is about a disputed sale of pressure washers to Menards. Because it was an unusually low-price, "closeout" sale, KNA insisted 181 Sales take a lower commission than that called for by the MRA. The disputed sale involved Menards stores in Wisconsin, Illinois, and Iowa. Despite this – and despite the express choice-of-law provision in the MRA – 181 Sales seeks to apply California law so it may recover treble damages and attorneys' fees.

This motion is only about what choice of law applies to this dispute. Although Defendant is adamant that it does not owe Plaintiff any unpaid commissions, the bases for that position are outside the scope of this motion. KNA maintains Delaware law should apply.

**II.  ARGUMENT**

**A.  The Independent Wholesale Sales Representatives Contractual Relations Act Does Not Apply to This Action Because Menards is Not Located in California.**

In 1990, the California Legislature passed the Independent Wholesale Sales Representatives Contractual Relations Act ("the Act"). Because the Act is Plaintiff's only basis for applying California law to this out-of-state deal, a thorough analysis is below.

In passing the Act:

> The Legislature finds and declares that independent wholesale sales representatives are a key ingredient to the California economy. The Legislature further finds and declares the wholesale sales representatives spend many hours developing their territory in order to properly market their products, and therefore should be provided unique protection from unjust termination of the territorial market areas. Therefore, it is the intent of the Legislature, in enacting this act to provide security and clarify the contractual relations between manufacturers and their nonemployee sales representatives.

Cal. Civ. Code, § 1738.10.

The Act applies when a manufacturer "is engaged in business *within this state* and uses the services of a wholesale sales representative . . . to solicit wholesale orders *at least* partially within this state, and the contemplated method of payment involves commissions . . ." Cal. Civ. Code, § 1738.13(a) [emphasis added].  The Act imposes simple requirements for sales representative agreements; they must be in writing and include: (1) the rate and method by which the commission

2

MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

is computed; (2) the time when commissions will be paid; (3) the territory assigned to the sales representative; (4) all exceptions to the assigned territory and customers therein; and (5) what chargebacks will be made against the commissions, if any. *Id*. at subdivision (b).

Most important, the Act allows aggrieved sales representatives to recover treble damages and attorneys' fees if the manufacturer "willfully fails to enter into a written contract as required by this chapter or willfully fails to pay commissions as provided in the written contract." Cal. Civ. Code, § 1738.15.

A plaintiff seeking application of the Act's protections must prove that they are a wholesale sales representative and that the defendant is a wholesale manufacturer as defined the Act. *Reilly v. Inquest Technology, Inc.*, 218 Cal. App. 4th 536, 546 (Cal. App. 4th Dist. 2013). The statute provides a definition for each. First, a "'Wholesale sales representative' means any person who contracts with a manufacturer . . . for the purpose of soliciting wholesale orders [and who] is compensated, in whole or part, by commission. Cal. Civ. Code, § 1738.12(e). Second, a "'Manufacturer' means any organization engaged in the business of producing . . . a product tangible or intangible, *intended for resale to, or use by the consumers of this state*." *Id*. at subdivision (a) [emphasis added]. In analyzing the definition of manufacturers covered by the Act, "[t]he limiting factor created by this language is the intent to sell to consumers within this state, as opposed to consumers elsewhere." *Reilly, supra,* 218 Cal. App. 4th at 549.

There is limited caselaw interpreting the Act. If fact, there are only four published state court cases and only one reported federal court case that cite the Act at all. Further, only one of those cases interprets the geographic boundaries of the Act. There, the California Appellate Court held: [all emphasis is the Court's]:

> The Legislature did not articulate what policy would be promoted by excluding manufacturers producing or importing products intended for eventual resale or use by out-of-state consumers. However, there is support for this interpretation elsewhere in the statutory scheme. For example, section 1738.13, subdivision (a), mandates that a manufacturer must enter into a written contract when it uses the services of a wholesale sales representative "to solicit wholesale orders at least partially *within this state*." Moreover, section 1738.10, containing the legislative findings and intent, announces the Legislature enacted this statutory scheme based on its determination "independent wholesale sales representatives are a key ingredient to the *California* economy" and sales representatives must be

3

MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

> "provided unique protection from unjust termination of the ***territorial market areas***," presumably in California. And finally, section 1738.14 mandates a manufacturer "who is not a resident of this state, and who enters into a contract regulated by this chapter is ***deemed to be doing business in this state*** for purposes of personal jurisdiction." These provisions, like the definition of manufacturer, limit the Act's scope to cover manufacturers hiring salespersons to soliciting wholesale orders within California, having territories "at least partially" within our state. Section 1738.12 simply provides the added requirement the manufacturer ***intend*** for its products to be eventually used or resold to California consumers. . . . The only stated limitation is that the manufacturer must solicit wholesale orders in California and ***intend*** for its goods to be later resold or used by a California consumer, promoting California's economy.

*Reilly, supra,* 218 Cal. App. 4th at 549-550 [emphasis in original].

In this case, the Act does not apply because Menards does not have any stores in California. Plaintiff alleges KNA underpaid commissions owed on a sale of pressure washers to Menards stores in Wisconsin, Illinois, and Iowa. There is no, nor will there ever be, evidence presented to establish that KNA ***intended*** these pressure washers "to be later resold or used by a California consumer, promoting California's economy." *Id.*; Cal. Civ. Code, § 1738.10.[2] Thus, when selling these pressure washers to Menards, KNA was not a "manufacturer" as defined by the Act, and Plaintiff is not entitled to the treble damages and attorneys' fees the Act affords. Cal. Civ. Code, § 1738.12(a); *Reilly, supra,* 218 Cal. App. 4th at 546. Because Plaintiff's sole basis for asserting California law applies to this matter fails, this Court should not apply California law.

Plaintiff attempts to circumvent this framework by citing an addendum to the MRA that added Fry's Electronics to 181 Sales' exclusive sales territory. Unlike Menards, Fry's Electronics has stores in California. However, the evidence will clearly establish that 181 Sales never sold any products to Fry's – in California or anywhere else. Plaintiff now claims because it *attempted* to sell to Fry's, the out-of-state sale to Menards is governed by the Act. This reading is not supported by the plain language of the Act, and Plaintiff distorts the Act's underlying public policy.

First, by its very words, the Act applies only when wholesale orders were solicited *at least partially* in California. Cal. Civ. Code, § 1738.13(a). This language limits the application of the

---

[2] Even in the unlikely hypothetical that a California consumer visited a Menards store in Wisconsin, Illinois, or Iowa and purchased a pressure washer to be used in California, that factual scenario would still not establish the required element of intent.

4

1  Act; it does not expand it. This lawsuit is to recover commissions from a sale to Menards – not
2  Fry's – and no Menards orders were solicited at least partially in California because Menards does
3  not have stores in California.

4  Second, the Legislature's intent in passing the Act was express: "The Legislature further
5  finds and declares the wholesale sales representatives spend many hours ***developing their territory***
6  in order to properly market their products, and therefore should be provided unique protection from
7  unjust termination ***of the territorial market areas***."  Cal. Civ. Code, § 1738.10 [emphasis added].
8  Here, there will be no evidence that KNA attempted at any time to terminate 181 Sales' California
9  territorial market area.  To the contrary, the dispute arose out of a sale to a Menard's store in
10 Wisconsin.

11 The Act was thus written to protect California companies (which 181 Sales is not) from
12 having their California territories unjustly taken away from them (no such attempt was made). Thus,
13 this is a breach of contract claim regarding a contract expressly outside the territorial scope of the
14 Act and outside the reach of the Act's policy goals. Because the Act does not apply to this action,
15 and because the Act is Plaintiff's only basis for alleging California law applies, California law does
16 not apply to this case.

### B.  A Balancing of the Factors Under the Restatement Favors Delaware Law.

#### 1.  Plaintiff Bears the Burden to Apply a Choice of Law Other than What the Parties Agreed Upon.

In addition to asking the Court to apply the Act, Plaintiff also requests the Court to disregard the parties' contracted choice of law. "Federal courts sitting in diversity apply the forum state's choice-of-law rules to determine the controlling substantive law." *Fields v. Legacy Health System*, 413 F.3d 943, 950 (9th Cir. 2005).  Under California law, a party seeking to enforce California law rather than that found in a written agreement must establish either:

> [1] The chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; [or]
>
> [2] That the chosen law is contrary to a fundamental policy of California" and "that California has a materially greater interest in the determination of the particular issue" and that California law "under the rule of § 188 [of the Restatement] would be

5

1  the state of the applicable law in the absence of an effective choice of law by the parties.

2  *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 917 (2001); citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468, 471 (Cal. 1992) [upholding application of chosen law where the party opposing the clause failed to establish all required elements]; Restatement 2d of Conflict of Laws ("Restatement"), §§ 187, 188 (2nd ed. 1988).

Parties face an uphill battle in attempting to throw out a contracted choice of law, as the California Supreme Court has found California to have "a strong policy favoring enforcement" of "arm's-length contractual choice-of-law provisions." *Nedloyd, supra,* 3 Cal. 4th at 464-465. Each factor of the *Nedlloyd*/Restatement is discussed in turn below.

**2.  Delaware Has a Substantial Relationship to the Parties Because KNA is a Delaware Corporation.**

Under the first part of the *Nedlloyd*/Restatement test, a freely and voluntarily agreed-upon choice-of-law provision in a contract is enforceable "if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law." *Nedlloyd, supra,* 3 Cal. 4th at 467; see also *Trust One Mortgage Corp. v. Invest America Mortgage Corp.*, 134 Cal. App. 4th 1302, 1308 (2005). The California Supreme Court has expressly held that "[a] party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract." *Nedlloyd, supra,* 3 Cal. 4th at 467; quoting *Carlock v. Pillsbury Co.*, 719 F. Supp. 791, 807 (D. Minn. 1989); see also *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 897 (1998) [finding "the mere fact that one of the parties to the contract is incorporated in the chosen state is sufficient to support a finding of 'substantial relationship'…[and] provides a 'reasonable basis' for the parties choice of law.] The Restatement mirrors this approach:

> When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.

Restatement, §§ 187, cmmt. f.

6
MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

1  Here, KNA is a Delaware corporation, and that alone establishes a substantial relationship with the parties and their choice of law. Further, as a manufacturer selling products nationwide through a network of sale representatives, KNA has a reasonable basis in having its sales representative agreements governed by a uniform body of law. *See 1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 514 (2010). Thus, Delaware has both a substantial relationship to the parties and provides a reasonable basis for the parties' choice, and Delaware law should apply. *See Washington Mutual, supra,* 24 Cal. 4th at 917; citing *Nedlloyd, supra,* 3 Cal. 4th at 468, 471.

### 3. Applying Delaware Law is not Contrary to a Fundamental California Policy.

Because Delaware has a substantial relationship to KNA and because a reasonable basis otherwise exists for the parties' choice of law, to disregard this choice Plaintiff must establish the "application of the law of [Delaware] would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Nedlloyd, supra,* 3 Cal. 4th at 468, 471; Restatement, § 187. A fundamental policy "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement, § 187, cmmt. g.

Plaintiff argues that California has – in the form of the Act – espoused a fundamental California public policy. However, as discussed at length above, the Act does not apply to this breach of contract action. Moreover, both California and Delaware espouse an equally important public interest: the freedom of contract. *See Ascension Ins. Holdings, LLC v. Underwood*, 2015 Del. Ch. LEXIS 19, at *15 (Del. Ch. Jan. 28, 2015); citing to *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009); *Nedlloyd, supra,* 3 Cal. 4th at 464-465. "Delaware respects the right of parties to freely contract and to be able to rely on the enforceability of their agreements; where Delaware's law applies, with very limited exceptions, [Delaware] courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits." *Ascension, supra,* at *14-15.

7

MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

1  Delaware has statutorily codified the ability of parties to agree to have their rights, remedies, liabilities, powers and duties governed by Delaware law. Tit. 6, § 2708.  Delaware law holds the right to contract to be fundamental, and the parties' contractual choice-of-law provision is by itself "conclusive presumed to be a significant, material and reasonable relationship with this state and shall be enforced whether or not there are other relationships with this state." *Ibid*.

Importantly, under Delaware law Plaintiff would still have the right to enforce the terms of the MRA. 181 Sales could maintain its breach of contract claim under Delaware law, and the elements and standard of proof would remain the same. Because Delaware law provides 181 Sales recourse, this is not the conflict of public policies Plaintiff describes. California courts have found public policy trumps an out-of-state choice-of-law provision only when the other state's result is truly unconscionable, like enforcing a Texas choice of law that would entirely prohibit plaintiff's wage and hour claims, a Texas choice of law that would enforce a shorter statute of limitations and entirely bar plaintiff's claims, or a Delaware choice of law that would have prohibited the entire class action to proceed.  See *Pinela v. Neiman Marcus Group, Inc.* 238 Cal.App.4th 227 (Cal. App. 1st Dist. 2015); *Peleg v. Neiman Marcus Group, Inc*., 204 Cal. App. 4th 1425 (Cal. App. 2nd Dist. 2012); *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005).  In this case, applying Delaware law does not conflict with any California public policy.

**4.** <u>California Does Not Have a Materially Greater Interest in the Outcome of This Litigation Than Delaware.</u>

California does not have a materially greater interest than Delaware in the outcome of this litigation. The MRA was not negotiated in California; the MRA was not performed in California; KNA is not domiciled in California; KNA's principal place of business is not California; there are no records of 181 Sales with the California Secretary of State; 181 Sales has never been registered to do business in California; and Menards has no stores in California. Indeed, the only connection between California and this litigation is that Ms. Brown used to live in California, and California's interest in protecting a former corporate citizen who never formally paid any state authority to operate in California is low. Conversely, Delaware has a high interest in protecting a current

corporate citizen's freedom of contract. Because Plaintiff cannot demonstrate that California's interest in affording it the treble damages and attorneys' fees is *materially* greater than Delaware's interest in protecting the sanctity of a choice-of-law provision, Delaware law applies.

### 5. If There Were No Choice-of-Law Provision, California Law Would Still Not Apply.

Finally, a party attempting to disregard a selected choice of law must also establish the desired choice of law would apply in the absence of an express choice-of-law provision under Restatement section 188. *Nedlloyd, supra,* 3 Cal. 4th at 468, 471; Restatement, § 188. Section 188 lists the factors courts should consider in the absence of a choice-of-law provision:

(1) The place of contracting;
(2) The place of negotiation of the contract;
(3) The place of performance;
(4) The location of the subject matter of the contract; and
(5) The domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement, § 188(2)(a)-(e).

Per section 188, these factors are to be read in conjunction with Restatement section 6, which reads: "the factors relevant to the choice of the applicable rule of law include:"

(1)   The needs of the interstate and international systems;
(2)   The relevant policies of the forum;
(3)   The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(4)   The protection of justified expectations;
(5)   The basic policies underlying the particular field of law;
(6)   Certainty, predictability and uniformity of result; and
(7)   Ease in the determination and application of the law to be applied.

Restatement, § 6(2)(a)-(g).

The Restatement adds: "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them." *Id*. at cmmt. c.

In analyzing the section 188 factors for this case: KNA signed the MRA outside California;

9
MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

1  it was not negotiated in California; it was impossible for the MRA to be performed in California;
2  the subject matter of the contract was in Wisconsin, Illinois, and Iowa; and neither KNA nor 181
3  Sales is incorporated in California. Further, under section 6, Delaware has a relevant interest and a
4  fundamental public policy at stake in its corporate citizens' right to contract; KNA did not expect at
5  the time of contract formation that California law would apply; and applying Delaware law affords
6  KNA predictability and uniformity of result.

7  As recognized in the comment to section 6, "it would be unfair and improper to hold a
8  person liable under the local law of one state when he had justifiably molded his conduct to
9  conform to the requirements of another state." *Id*. It is because of this factor "that the parties are
10 free within broad limits to choose the law to govern the validity of their contract." *Ibid*. KNA, as a
11 Delaware corporation, affirmatively includes a Delaware choice-of-law provision in its MRA and,
12 thus, conforms to the requirements of Delaware in performing under this contract. It would be
13 unfair and improper to hold KNA liable under the California Wholesale Sales Representatives Act
14 when KNA had justifiably molded its conduct to conform to Delaware law. KNA had no
15 expectation that, as a Delaware corporation doing business with a Nevada corporation for sales to
16 be performed in Wisconsin, Illinois, and Iowa, that it would be held accountable to California law.

17 Further, predictability and uniformity of result "are important values in all areas of the law"
18 and, "[t]o the extent that they are attained in choice of law, forum shopping will be discouraged."
19 *Ibid*. It is in pursuit of these values that KNA includes a choice-of-law provision in its MRA. 181
20 Sales, on the other hand, attempts to skirt these values and engages in the very forum shopping that
21 the Restatement is meant to discourage. "Predictability and uniformity of result are of particular
22 importance in areas where the parties are likely to give advance thought to the legal consequences
23 of their transactions." *Ibid*. The area of contracts governing manufacturer sales representatives that
24 operate throughout various states is one in which parties are likely to give advance thought to the
25 legal consequences of their transactions and, thus, one in which predictability and uniformity of
26 result are especially valued.

27 Thus, when weighed in total, protecting KNA's justified expectations and ensuring
28

10
MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST

predictability and uniformity in results by applying Delaware law accomplishes the Restatement's "most important function" of choice-of-law rules: to make the interstate legal systems work in harmony. *Ibid*.

### C. The MRA Has the Choice-of-Law Provision of Delaware.

Any argument that when an agreement only indicates it will be "construed" under the laws of a certain state, such language does not constitute an effective choice of law is unavailing as it is not supported by either the facts or precedential law.

First, the parties' choice-of-law does not only indicate it will be "construed" under Delaware law and nothing more. The MRA reads in full: "**Governing** Law – This Agreement shall be **made** and **construed** in accordance with the laws of the State of Delaware located in the United States of America." MRA, § 12.2 [emphasis added]. Thus, by its express terms, the parties' choice-of-law provision expresses the parties' intent to have Delaware law both govern and interpret the MRA. Under basic contract interpretation principles, the parties have clearly indicated a preference for Delaware law. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code, § 1636. "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." Cal. Civ. Code, § 1639. With respect to choice-of-law provisions specifically, the Restatement provides:

> When the parties have made such a choice, they will usually refer expressly to the state of the chosen law in their contract, and this is the best way of insuring that their desires will be given effect. But even when the contract does not refer to any state, the forum may nevertheless be able to conclude from its provisions that the parties did wish to have the law of a particular state applied. So the fact that the contract contains legal expressions, or makes reference to legal doctrines, that are peculiar to the local law of a particular state may provide persuasive evidence that the parties wished to have this law applied.

Restatement, § 187 cmmt a. Here, the parties' wishes are clear.

Second, even if the parties' choice-of-law provision only indicated it was to be only "construed" under Delaware law, no published authority exists indicating such phrasing does not constitute an effective choice of law. Moreover – as explained at length in section 5 above – even if

11

there were no choice-of-law provision in the MRA, California law would still not apply. *Nedlloyd, supra,* 3 Cal. 4th at 468, 471; Restatement, §§ 187-188.

### III. CONCLUSION

Because California's Independent Wholesale Sales Representatives Contractual Relations Act does not apply to this action and because a balancing of the factors under the Restatement does not justify ignoring the parties' contracted choice of law, this Court should apply Delaware law in this matter.

Respectfully submitted,

DATED: March 18, 2016

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

*/s/ Daniel J. Herling*

Daniel J. Herling, Esq.
Brent M. Douglas, Esq.
Attorneys for Defendant
KÄRCHER NORTH AMERICA, INC.

46700221v.1

12

MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE RE CHOICE OF LAW;
CASE NO. 3:15-CV-03191-JST