UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 181 SALES, INC., | Case No. 15-cv-03191-JST |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION IN LIMINE AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| KARCHER NORTH AMERICA, INC., | |
| Defendant. | Re: ECF Nos. 45, 51 |

Before the Court is Defendant Karcher North America, Inc.'s ("Karcher") Motion in Limine Regarding Choice of Law, ECF No. 45, and Plaintiff 181 Sales, Inc.'s ("181 Sales") Motion for Summary Judgment, ECF No. 51. The Court will deny Defendant's Motion in Limine and grant Plaintiff's Motion for Summary Judgment.

## I.  BACKGROUND

### A.  Undisputed Facts

Plaintiff 181 Sales is a Nevada corporation with its only place of business in California. The owner and sole employee of 181 Sales, Kathleen Brown, is an independent sales representative who has been a California resident at all times relevant to the motions under consideration. Defendant Karcher is a Delaware corporation with its principal place of business in Colorado. Karcher is a manufacturer and distributor of cleaning equipment, including pressure washers.

On June 20, 2014, 181 Sales and Karcher entered into a Manufacturer Representative Agreement (the "MRA") with an effective date of June 1, 2014. As part of the MRA, Karcher agreed that 181 Sales would be Karcher's "exclusive sales agent to" two retailers, Menards and Fry's Electronics ("Fry's"). Through two addendums to the MRA, Karcher agreed to pay 181 Sales a 4% commission on the net invoice amounts billed to Menards and Fry's. Karcher further

United States District Court
Northern District of California

1 │ agreed that it would not "otherwise distribute or sell the Products to [Menards or Fry's], except as

2 │ hereinafter provided."

3 │      The MRA included the following choice of law provision:

4 │
5 │        12.2 Governing Law - This Agreement shall be made and construed in accordance with the laws of the State of Delaware located in the United States of America.

6 │      The MRA also provided:

7 │
8 │
9 │        12.3 Entire Agreement - This Agreement together with all other documents incorporated by reference shall constitute the entire Agreement between the Company and the Representative with respect to all matters herein . . . . This Agreement shall not be amended, altered or qualified except by memorandum in writing signed by the Company and the Representative and any amendment, alteration or qualification hereof shall be null and void and shall not be binding upon any party who has not given its consent as aforesaid.
10 │
11 │

12 │      Pursuant to the MRA, Ms. Brown, on behalf of 181 Sales, attempted to solicit sales of

13 │ Karcher's products from Fry's by, for instance, contacting and giving presentations to

14 │ representatives of Fry's located at several of its California locations.  Ms. Brown was not able to

15 │ complete any sales with Fry's.  However, Ms. Brown was able to secure sales of various Karcher

16 │ products to Menards totaling $1,508,040 in September and October of 2014.[1]  These sales were

17 │ made to various Menards locations in Wisconsin, Illinois, and Iowa.

18 │      After the sales with Menards were secured, Karcher claims that its representative called

19 │ 181 Sales and "insisted the MRA be modified and that 181 Sales accept the industry standard 1%

20 │ commission on [the] sale[s]."  ECF No. 63 at 6.  Karcher asserts that the reduced 1% commission

21 │ was "industry standard" because the products sold to Menards were part of a so-called "closeout

22 │ sale" for which the profit margins were substantially smaller than normal sales.  Id. at 5–6.

23 │ Karcher further asserts that "[a]lthough 181 Sales was not initially enthusiastic about the reduced

24 │ commission, eventually 181 Sales understood and agreed that commissions on closeout sales were

25 │ atypical and could [ ] be negotiable."  Id. at 6.

26 │

27 │
28 │
_____

[1] Karcher asserts that "181 Sales played virtually no role in [the] disputed sale" to Menards.  ECF No. 63 at 1.  Rather, Karcher claims that "it was another [Karcher] employee hired in the summer of 2014 who had a personal connection at Menards and closed this deal."  Id.

United States District Court
Northern District of California

1      181 Sales disputes Karcher's assertions regarding the agreement to reduce the commission

2   to 1%, claiming that "Karcher simply made that up."  ECF No. 51 at 12.  "To the contrary," 181

3   Sales claims that "Ms. Brown objected each time Karcher mentioned the purported reduction, as

4   evidenced by multiple emails in which she informed Karcher that the 4% rate in the MRA would

5   apply to the sales in question."  Id.

6      **B.  Procedural History**

7      On June 5, 2015, 181 Sales filed a complaint against Karcher in Contra Costa County

8   Superior Court, asserting claims for breach of contract and violation of California's "Independent

9   Sales Representative Statutes."  ECF No. 1-1.  On July 9, 2016, Karcher removed this case to

10  federal court on the basis of diversity jurisdiction.  ECF No. 1.

11     On March 18, 2016, Karcher filed a Motion in Limine Regarding Choice of Law.  ECF

12  No. 45.  On April 21, 2016, 181 Sales filed a Motion for Summary Judgment.  ECF No. 51.  The

13  Court now considers both of these motions.

14     **C.  Jurisdiction**

15     The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

16  **II.    LEGAL STANDARD**

17     Summary judgment is proper when a "movant shows that there is no genuine dispute as to

18  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

19  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

20  citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A

21  party also may show that such materials "do not establish the absence or presence of a genuine

22  dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R.

23  Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

24  fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

25  49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In

26  considering a motion for summary judgment, the court may not weigh the evidence or make

27  credibility determinations, and is required to draw all inferences in a light most favorable to the

28  non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  Where the party moving for summary judgment would bear the burden of proof at trial,

2  that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

3  uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474,

4  480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

5  proof at trial, that party bears the initial burden of either producing evidence that negates an

6  essential element of the non-moving party's claim, or showing that the non-moving party does not

7  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If

8  the moving party satisfies its initial burden of production, then the non-moving party must produce

9  admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire &

10  Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000).  The non-moving party

11  must "identify with reasonable particularity the evidence that precludes summary

12  judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the

13  district court to "to scour the record in search of a genuine issue of triable fact."  Id.

14  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion

15  for summary judgment; rather, the nonmoving party must introduce some significant probative

16  evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150,

17  1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails

18  to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v.

19  Catrett, 477 U.S. 317, 323 (1986).

20  **III.    MOTION IN LIMINE**

21  The Court first considers Karcher's Motion in Limine Regarding Choice of Law.  ECF No.

22  45. 181 Sales' second claim against Karcher arises under California's Independent Wholesale

23  Sales Representative Contractual Relations Act of 1990 (the "Act"), Cal. Civ. Code § 1738.10–

24  1738.17.  Karcher argues that the Act does not apply to the parties' dispute because the MRA

25  contains a choice of law provision, precluding the application of California law.  The choice of

26  law provision provides:

27         12.2 Governing Law - This Agreement shall be made and construed
       in accordance with the laws of the State of Delaware located in the

28         United States of America.

4

1     According to Karcher, "the parties' choice-of-law provision expresses the parties' intent

2   to have Delaware law both govern and interpret the MRA." ECF No. 45 at 15.  181 Sales counters

3   that the choice of law provision "is not sufficiently broad to displace plaintiff's statutory rights

4   under California law." ECF No. 47 at 14.  In particular, 181 Sales emphasizes that the choice of

5   law provision states only that "*[t]his Agreement* shall be *made* and *construed* in accordance with

6   the laws of the State of Delaware;" it does not provide that any disputes related to the MRA will

7   be governed solely by Delaware law.  Id. at 15 (emphasis added).

8     "Federal courts sitting in diversity apply the forum state's choice-of-law rules to

9   determine the controlling substantive law." Fields v. Legacy Health System, 413 F.3d 943, 950

10   (9th Cir. 2005).  "Under California law, a choice of law made in an arm's length negotiation by

11   sophisticated commercial parties is enforced unless it is contrary to California's fundamental

12   policy." Towantic Energy, L.L.C. v. Gen. Elec. Co., No. 04-cv-00446-JF, 2004 WL 1737254, at

13   *5 (N.D. Cal. Aug. 2, 2004).  Nonetheless, the Court must first determine whether 181 Sales'

14   claim under the Act "fall[s] within [the] scope" of the choice of law provision.  Washington Mut.

15   Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001).  See also Towantic, 2004 WL 1737254,

16   at *5.

17     "Many courts [applying California's choice of law rules] have . . . held that narrow choice

18   of law provisions do not bar non-contractual causes of action under the laws of another state."

19   Towantic, 2004 WL 1737254, at *5.  For instance, in Towantic, the court examined a choice of

20   law provision, which provided: "Contract of Sale shall be construed and interpreted in accordance

21   with the Laws of the State of New York."  Id. The court concluded that "[w]hile this narrowly

22   worded choice of law clause is sufficient to govern interpretation and construction of the contract,

23   it does not explicitly bar tort claims related to the contract."  Id.  See also Dollar Sys., Inc. v.

24   Avcar Leasing Sys., Inc., 890 F.2d 165, 171 (9th Cir. 1989) (finding that choice of law provision

25   providing that "[t]his agreement shall be construed in accordance with the laws of" one state did

26   not preclude statutory claims arising from the laws of another state).

27

28

1    Here, the Court concludes that the MRA's choice of law provision is not broad enough to

2    preclude 181 Sales' statutory claim under California law.  The provision provides: "This

3    Agreement shall be made and construed in accordance with the laws of the State of Delaware."

4    As in <u>Towantic</u>, the Court finds that nothing in this provision suggests that conduct related to the

5    MRA will be governed solely by Delaware statutory law.[2]  While Karcher attempts to distinguish

6    <u>Towantic</u> and the other cases cited by 181 Sales based on the fact that those cases found that a

7    narrow choice of law provision did not preclude state tort claims, as opposed to statutory claims,

8    Karcher does not cite any authority declining to apply the principle explained in <u>Towantic</u> to

9    statutory claims.[3]  ECF No. 50 at 3.  Moreover, Karcher fails to explain why this distinction is

10   meaningful.  Absent such authority, the Court finds that while the narrowly worded choice of law

11   clause in the MRA is sufficient to govern interpretation of the contract, it does not bar non-

12   contractual causes of action of another state, including 181 Sales' claim under the Act.[4]

13   **IV.    MOTION FOR SUMMARY JUDGMENT**

14   The Court next considers 181 Sales's Motion for Summary Judgment.  ECF No. 51.  181

15   Sales moves for summary judgment "(a) that Karcher breached the parties' agreement by failing to

16   pay plaintiff its full 4% commission due under the parties' agreement, and that plaintiff is

17

18

---

[2] Indeed, the use of the phrase "in accordance with," as opposed to "subject to," suggests that statutory law of other states may be applied to disputes arising out of the MRA in addition to Delaware statutory law, so long as those laws do not directly conflict.  Cf. <u>Delta & Pine Land Co. v. Monsanto Co.</u>, No. 1970-N, 2006 WL 4763699, at *3 (Del. Ch. May 24, 2006) (contrasting use of the phrase "subject to" with use of the phrase "in accordance with").

[3] The Court notes that California courts have found that the phrase "'governed by' . . . reflects the parties' clear contemplation that 'the agreement' is to be completely and absolutely controlled by" the designated forum's law."  <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 469 (1992).  However, unlike in <u>Nedlloyd</u> where the choice of law provision provided that "[t]his agreement shall be *governed by* and construed in accordance with Hong Kong law," the choice of law provision here merely provides that the MRA "shall be made and construed in accordance with" Delaware law.  While section 12.2 of the MRA is titled "Governing Law," the Court agrees with 181 Sales that "the heading language is plainly limited by the explicit text of the provision itself," ECF No. 47 at 17, which provides only that the MRA "shall be made and construed in accordance with" Delaware law.

[4] The Court addresses Karcher's first argument in its Motion in Limine—namely that the Act does not apply because Menards does not have any stores in California, ECF No. 45 at 2–5—in its discussion of 181 Sales' Motion for Summary Judgment below.

United States District Court
Northern District of California

therefore entitled to $45,241.20 in past due commissions; (b) that the choice of law provision in the Karcher-drafted agreement is not broad enough to displace plaintiff's statutory rights under California law; (c) that California law, and not Delaware law, governs plaintiff's claims for treble damages and attorneys fees; (d) that Karcher's refusal to pay plaintiff the full 4% commission due under the parties' agreement was willful under Cal. Civ. Code §1738.15 and that plaintiff is therefore entitled to treble damages; (e) that plaintiff is entitled to prejudgment interest under Cal. Civ. Code §3287(a) and §3289 at the rate of l0% per annum from the date of the breach, which occurred no later than November 21, 2014; and (f) that plaintiff is entitled to its attorneys fees and costs under Cal. Civ. Code §1738.16."  ECF No. 51 at 8.

   **A.    Breach of Contract**

   Under Delaware law,[5] "the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."  H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003).  181 Sales argues that Karcher breached the MRA by failing to pay 181 Sales the 4% commission on sales to Menards provided for in the addendum to the MRA.  ECF No. 51 at 14.

   Karcher does not dispute that it has failed to pay 181 Sales the 4% commission on the $1,508,040 of sales made to Menards in September and October of 2014.  ECF No. 63 at 1–3. Rather, Karcher argues that "[t]he MRA was modified to accommodate" a closeout sale to Menards by reducing the commission to 1%.  ECF No. 63 at 2–3.  It claims that this modification occurred in a phone call between Karcher and 181 Sales.  ECF No. 63-1 at 3.  181 Sales denies that the parties ever reached such an agreement.  ECF No. 66 at 2.

   It is not necessary for the Court – or a jury – to resolve this dispute, however, because the parties' agreement contains an integration clause that expressly forbids amendments to the MRA

---

[5] The Court concludes that Delaware law governs 181 Sales' breach of contract claim.  The MRA's choice of law provision provides: "This Agreement shall be made and construed in accordance with the laws of the State of Delaware."  Despite the fact that the Court has concluded that this provision is not broad enough to preclude 181 Sales' California statutory claim under the Act, the Court nonetheless finds that the choice of law provision is broad enough to require Delaware law to be applied to 181 Sales' claim based on breach of the MRA.  Neither party argues otherwise.  See ECF No. 51 at 8; ECF No. 63 at 1–2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  that are not in writing.  The relevant provision states, "This Agreement shall not be amended,

2  altered or qualified except by memorandum in writing signed by the Company and the

3  Representative and any amendment, alteration or qualification hereof shall be null and void and

4  shall not be binding upon any party who has not given its consent as aforesaid."

5      Karcher does not argue that the alleged amendment to the MRA was "in writing signed by

6  [the parties]."  As a result, the alleged oral modification could not alter the terms of the MRA.  See

7  Cent. Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC, No. CIV.A. 5140-CS,

8  2012 WL 3201139, at *26 (Del. Ch. Aug. 7, 2012) ("If contract law is to be reliable, promises

9  have to be enforceable.  Having signed an integrated agreement with a no-oral modification

10  provision that itself could only be waived in writing, Central Mortgage was already barred from

11  claiming an oral modification."); Harlan ex rel. Sharitz v. A to Z Contractors, Inc., No. CIV.A.

12  1999-06-056, 2001 WL 1600745, at *2 (Del. Com. Pl. Jan. 30, 2001) ("Here, the contract clearly

13  indicates that changes in specifications must be in writing. Giving this language its plain meaning,

14  no oral modifications to the contract could be made.").

15      For similar reasons, the Court rejects Karcher's argument that "industry custom mandates a

16  lower sales commission for closeout sales," like the sales at issue here.  ECF No. 63 at 2.  While

17  "[i]t is a[n] established principle of contract law that 'customs may be proved, not only to aid in

18  interpretation of the words of the parties, but also to affect the contractual relations of the parties

19  by adding a provision to the contract that the words of the parties can scarcely be said to have

20  expressed,'" custom can only "be invoked to add provisions *not specifically noted in the*

21  *agreement*."  Price Org., Inc. v. Universal Computer Servs., Inc., No. CIV. A. 12505, 1993 WL

22  400152, at *5 (Del. Ch. Oct. 1, 1993) (internal citations omitted) (emphasis added).  Here, the

23  MRA specifically provided that 181 Sales would receive a 4% commission on all sales made to

24  Menards.  Because the MRA included this specific provision, Karcher cannot argue that "industry

25  custom" unilaterally added a separate provision limiting the 4% commission to all sales that were

26  not "closeout sales."  Moreover, under Delaware law, "[i]f a contract is unambiguous, extrinsic

27  evidence [including industry custom] may not be used to interpret the intent of the parties, to vary

28  the terms of the contract or to create an ambiguity."  Delaware Exp. Shuttle, Inc. v. Older, No.

1    CIV.A. 19596, 2002 WL 31458243, at *6 (Del. Ch. Oct. 23, 2002).  Here, Karcher does not argue,

2    and the Court does not find, that there exists any ambiguity in the MRA with respect to the

3    commission required to be paid to 181 Sales for sales made to Menards.

4         Accordingly, the Court grants 181 Sales' motion for summary judgment regarding its

5    breach of contract claim, finding that there is no material dispute that Karcher breached the MRA

6    by failing to pay 181 Sales its full 4% commission due under the MRA and that 181 Sales is

7    therefore entitled to $45,241.20[6] in past due commissions.

8    **B.    California's Independent Wholesale Sales Representative Contractual
            Relations Act of 1990**

9

10        The California legislature enacted the Act, in part, "to provide security and clarify the

     contractual relations between manufacturers and their nonemployee sales representatives."  Cal.

11
     Civ. Code § 1738.10.  Under the Act,
12

13            [w]henever a manufacturer . . . is engaged in business within this
              state and uses the services of a wholesale sales representative, who
14            is not an employee of the manufacturer . . . to solicit wholesale
              orders at least partially within this state, and the contemplated
15            method of payment involves commissions, the manufacturer. . . shall
              enter into a written contract with the sales representative.

16   Cal. Civ. Code § 1738.13(a).  Additionally, the Act provides:

17
              A manufacturer . . . who willfully fails to enter into a written
18            contract as required by this chapter or willfully fails to pay
              commissions as provided in the written contract shall be liable to the
19            sales representative in a civil action for treble the damages proved at
              trial.

20   Cal. Civ. Code § 1738.15.  The Act further provides that "[i]n a civil action brought by the sales

21   representative pursuant to this chapter the prevailing party shall be entitled to reasonable

22   attorney's fees and costs in addition to any other recovery."  Cal. Civ. Code § 1738.16.

23        181 Sales argues that it "is entitled to treble damages" under the Act "because Karcher's

24   failure to pay commission due was willful."  ECF No. 51 at 21.  Karcher responds that "the Act

25   does not apply because Menards," the store to which the contested products were sold, because

26   Menards "does not have any stores in California."  ECF No. 63 at 9.  According to Karcher, the

27

28   ───────────────
     [6] Karcher does not dispute this figure in its Opposition brief.  See ECF No. 63.

United States District Court
Northern District of California

1    fact that Menards does not have any stores in California means that Karcher is not a

2    "manufacturer" as defined by the Act.  Id. at 10.  The Court finds this argument unpersuasive.

3           The Act defines a "manufacturer" as "any organization engaged in the business of

4    producing, assembling, mining, weaving, importing or by any other method of fabrication, a

5    product tangible or intangible, intended for resale to, or use by the consumers of [California]."

6    Cal. Civ. Code § 1738.12(a).  It is undisputed that Karcher is engaged in the business of producing

7    tangible products intended for resale to consumers in California.  Indeed, Karcher commissioned

8    181 Sales[7] to solicit sales from Fry's Electronics stores located in California.  Simply because the

9    disputed sales were shipped to Menards stores in other states does not negate the fact that Karcher

10   produced products "intended for resale to . . . consumers" in California.  As a result, the Court

11   finds that Karcher is a "manufacturer" under the Act.

12          In a similar way, Karcher also argues that no violation of the Act has occurred because

13   section 1738.13(a) only applies to manufacturers who "use[] the services of a wholesale sales

14   representative . . . to solicit wholesale orders at least partially within this state . . . ."  See ECF No.

15   63.  According to Karcher, no violation has occurred because the disputed sales to Menards, which

16   does not have any store locations in California, did not involve the solicitation of wholesale orders

17   "at least partially within" California.  Id.

18          This argument misreads the Act.  Section 1738.13(a) requires manufacturers who "use[]

19   the services of a wholesale sales representative . . . to solicit wholesale orders at least partially

20   within this state" to enter into a written contract with the wholesale sales representative.  Because

21   Karcher used the services of 181 Sales to solicit wholesale orders from Fry's Electronics in

22   California, the Act required Karcher to enter into a written contract with 181 Sales, which it did.

23   Section 1738.15 separately provides that a manufacturer who "willfully fails to pay commissions

24   as provided in the written contract shall be liable to the sales representative in a civil action for

25   treble the damages."  Section 1738.15 does not limit the commissions over which a plaintiff may

26   sue to commissions related to sales made to California businesses.  Rather, section 1738.15

27   _____

28   [7] Karcher does not dispute that 181 Sales is a "wholesale sales representative" under section
     1738.12(3) of the Act.

United States District Court
Northern District of California

1    provides that a manufacturer is liable for failure to pay "commissions *as provided in the written*

2    *contract*." (emphasis added).

3           Nothing in the Act suggests that section 1738.15 does not encompass a manufacturer's

4    failure to pay commissions on out-of-state sales included in a written contract where that contract

5    also includes a provision to solicit sales "at least partially within" California.  Here, under the

6    terms of the MRA, Karcher used the services of 181 Sales to solicit wholesale orders from Fry's

7    Electronics (in California), as well as Menards (outside of California).  Because there is no dispute

8    that Karcher has failed to pay 181 Sales the 4% commission for the sales made to Menards, the

9    Court concludes that Karcher is liable for treble damages under section 1738.15 of the Act.[8]

10          Finally, 181 Sales argues that it is entitled to recover attorney's fees and costs, as well as

11   prejudgment interest, pursuant to Cal. Civ. Code § 1738.16 (attorney's fees and costs) and Cal.

12   Civ. Code § 3287(a) (prejudgment interest).  Absent any argument from Karcher to the contrary,

13   the Court finds that 181 Sales is entitled to attorney's fees and costs as "the prevailing party" in a

14   civil action brought under the Act.  Cal. Civ. Code § 1738.16.  Likewise, absent any argument

15   from Karcher to the contrary, the Court finds that 181 Sales is entitled to prejudgment interest at

16   the rate of 10% per annum pursuant to Cal. Civ. Code § 3287(a).

17                                        **CONCLUSION**

18          The Court denies Defendant's Motion in Limine.  The Court grants Plaintiff's Motion for

19   Summary Judgment in its entirety.

20          The Court orders the parties to meet and confer within ten days of the filing date of this

21   order to discuss a proposed form of final Judgment, including the computation of damages,

22   attorney's fees, costs, and prejudgment interest.  If the parties reach an agreement, 181 Sales shall

23   _____

24   [8] The Court also finds that Karcher's refusal to pay was willful.  As 181 Sales argues, "[i]n civil
     cases, the word 'willful,' as ordinarily used in courts of law, does not necessarily imply anything
25   blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency,
     but merely that the thing done or omitted to be done was done or omitted intentionally.  It amounts
26   to nothing more than this: That the person knows what he is doing, intends to do what he is doing,
     and is a free agent."  Baker v. Am. Horticulture Supply, Inc., 185 Cal. App. 4th 1059, 1075
27   (2010), as modified on denial of reh'g (July 21, 2010).  Here, 181 Sales has presented evidence
     that Karcher's refusal to pay the 4% commission was intentional.  ECF No. 52 (Decl. of Kathleen
28   Brown) ¶¶ 15, 18.  Karcher has presented no evidence to contest this finding.  Accordingly, the
     Court concludes that Karcher's refusal to pay the 4% commission was willful.

1  file the proposed form of Judgment signed by both parties, within five days of the parties' meet-

2  and-confer.  If the parties cannot reach an agreement, 181 Sales shall instead file a motion for

3  attorneys' fees pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and Civil Local

4  Rule 54-5, which motion shall also set forth 181 Sales' calculation of damages, penalties, and

5  prejudgment interest.  Such motion must be filed by August 4, 2016.  Opposition and reply briefs

6  shall be due pursuant to local rule.

7          The pretrial conference and trial dates are hereby vacated.

8          IT IS SO ORDERED.

9  Dated:  July 6, 2016

10  _____
         JON S. TIGAR
11         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

12